Case number 23-3222 Maribethe Ingram versus Jared Regano et al. Oral argument is not to exceed 15 minutes per side. Mr. Ingram, you may proceed for Mr. Ingram, you may proceed for the appellant. May it please the court, Casey Ingram for appellant plaintiff Maribethe Ingram. I would like to reserve three minutes for rebuttal. We're here today because Maribethe wants her day in allegations that defendants acted outside the scope of their authority and in bad faith. And if this court does not reverse the district court's decisions, defendants will not be held accountable for their actions and they will feel empowered to continue those same egregious actions against other employees in the future. I would like to highlight a few reasons why the court should find in Maribethe's favor. First, issue preclusion does not apply to this action because the numerous adverse employment actions taken by defendants Regano and Bolden against Maribethe were never heard or adjudicated by the state court. Further, no mutuality. Can I just stop you there? I realize it's issue preclusion and not claim preclusion. I got that point. But what I'm struggling a little with is how much you can slice this. Is it really the case that if you've raised an adverse employment action claim, so one of them would be not being hired as a substitute, you're really allowed to get out of issue preclusion by going to the other court and saying, well, I've got another idea. They don't investigate these claims in the same way. And that could be an adverse employment action or you find some evidence and the new evidence allows you to pitch the claim a little differently. So what seems funny to me is it's element of a claim, the adverse employment, that's one part of the claim. I just would have thought if you litigated it once, that was that. Your Honor, it's a different set of facts. So an adverse employment action, as you know, is anything that would dissuade a reasonable worker from raising a complaint of harassment or discrimination. So in this case, when Maribethe created a false report containing allegations she'd never seen, never had a chance to respond to, then they used that report to permanently remove her from Lewis Elementary. And they also then interfered in the investigation into their own retaliation. I just want to make sure you're getting my point. You brought this exact same claim in state court. All right. It was an adverse employment claim. And I'm trying to deal with the problem that your theory of the case would allow you in the second action to avoid an issue preclusion bar just by doing what you're saying, different facts. I've found some more things. I had another deposition. Issue preclusion would be useless if that's all it took, finding different facts. Your Honor, the two cases are different. And I think that's one thing that's been confusing in that the federal case, which was filed in 2019, relates to the actions taken by Defendants Regano and Bolden in 2018. And the actions regarding that they took against Maribethe. The state court case relates to the actions taken by Defendant Atom in 2017. And then the fact that he lied about those actions, that attention was brought to the board. And instead of... They don't grow out of the same fundamental dispute? No, they're two different. They all came back to an initial dispute, but they're actually two different disputes. There were two different causes of action. What is the evidence that you will put into effect if this is sent back down? So the state court never heard the actions taken by Defendants Regano or Bolden. They were never deposed. Their actions that they took regarding the February 28th retaliation complaint were never addressed by the state court. And those are the actions that are before this court. And those are the actions that were addressed in the previous time we were before this court regarding... And what are those... So the adverse employment action in the state court, to be clear, is not being hired back as a substitute, right? Yeah. Well, not being hired as a substitute. And the statement by the state court was that she made more money substituting at another school than she did at Lewis Elementary. And that's not Don't fight everything or we'll get nowhere. So the state court action is about not getting hired back. What are the theories of adverse employment action and the federal action? The theory of the actions taken outside the scope of authority by Defendants Regano and Bolden, where they created a false report against Mary Beth, they denied her due process. So if I were So then they created a false report and used it to punish her. And then when she complained of that retaliation, which was a separate complaint than the one before the state court, they undermined that investigation by inserting... So you never mentioned false reports in the state court action? No, sir. Not coming from Defendants Regano or Bolden. No, no, no. I'm not making that point. I'm just saying the concept of false reports. I'm sure that was mentioned in the state court action. It was mentioned that Mary Beth disagreed with the March 14th disposition, but the actions underlying it and why it was false in the actions taken by Defendants Regano and Bolden were not before the state court. None of their actions... I think you're blurring the similarity of the adverse employment issue with mutuality. I think for the purposes of the questions I'm asking, assume you lose on mutuality. So continually mentioning individuals is not helping me. You've got to explain to me how these are distinct adverse employment actions. That's the point. And I would have thought the key one was not getting hired back. That's pretty obvious. And I've never really heard this theory. It's an adverse employment action to do a biased report. That's just complaining about the process of not getting invited back. It's not really an independent adverse employment action. It's just sloppy work. Well, Your Honor, it all depends on what it would do to the reasonable worker and how it would dissuade them. Because the Supreme Court's already said you don't actually have to have an employment action to be an adverse employment action. It's the activities taken against the employee. So the state court never addressed the actions that were taken against Mary Beth related to the February 27th retaliation complaint. They only addressed 2017. So in that case, that situation, Mr. Aikum said you can't come back to Lewis. But is that your fault in how you drafted your complaint in the state court? I mean, you could have concluded it, could you not? Well, Your Honor, I viewed these as two separate, complete different causes of actions and two different claims. That doesn't answer my question. Okay. I would have had to then join the cases or combine the cases. And because I had a federal case involving constitutional claims versus a state court case, those basically related to defendant Aikum's actions, I did not see them as that I could combine them. I could have raised them, I guess, in the state court, but it wouldn't have worked because neither defendants, Vergano or Bolden, were included. That doesn't make any sense. I mean, state courts hear federal claims all the time and get jurisdiction over the one defendant, you can get it over the other. It just doesn't make any sense. I mean, it really looks like you're trying to hassle the school district by two suits and two different courts. That's really what it looks like from a distance. I couldn't understand why you didn't bring them all in one place. Go ahead. So the reason they didn't come in one complaint. So in 2019, after the EEOC came back and said, okay, you have a right to sue, we had 90 days to file that claim. So that was filed in 2019. The actions in the state court case did not come to light until 2020. And those were brought before the school board saying, okay, these are the actions taken by defendant Aikum. We would like you to address this. The school board, instead of addressing it, promoted him. So then we had to bring the state court complaint. So the state court complaint was over a year after the federal complaint. So this case came first. Did the state court make a decision on whether the plaintiff had a property right in the job that she was excluded from? No, they did not, your honor. They did not address due process or section 1983 or the equal protection claim or the sex discrimination claims. And the adverse employment actions raised for the sex discrimination and equal protection claims are different than those for the retaliation claim. So even if you said, okay, you have it for the retaliation claim, because you have separate statutes, there's case law. But just mentioning different statutes does not help you show what the injury is or what the adverse employment action is. So, so far what I understand, I want to make sure I'm not missing something. What I understand so far is state court action is about not being hired back. Federal court has biased report. What else is in the federal court action that counts as an adverse employment action? So there was disparate treatment between how she was treated as a female? That's called a biased report. That's the biased report point. You're just slicing it. This is the whole thing I'm worried about. You're just slicing things every which way. We'll, we'll finish the federal court action. Then you'll sue in state court and say, well, I've got a different theory of adverse employment action. I can keep going until the end of time. I don't, I don't, that's what I don't understand. Maybe I'm confused by your question then, because to me, it seemed clear that actions taken that would dissuade somebody from raising a complaint of harassment constitutes an adverse employment action. So whether she was allowed back into Lewis Elementary or not is not really the issue for the adverse employment action in this case. That relates to the due process action. The state involved that, but in this case, it's the actions taken outside the scope of authority by defendants, Regano and Bolden against Mary Beth. And they were biased report, not investigating other employees, anything else? The fact that there were multiple cases where she is a female was treated different than the male. The fact that they went and undermined them, she filed a complaint against them and they undermine that investigation to make sure that she would not win. So that would definitely deter somebody from filing a complaint that they knew the people they filed the complaint against would go in and interfere in the investigation to make sure that they had not, it was not held against them. She could still teach at other schools. She just was precluded from this one place, right? Within the system. Correct, your honor. But she had an oral contract with defendant Acom, which was the property interest where the due process issue comes up because she had an oral contract. The Supreme Court said an implied contract is enough to show a property interest in summary judgment. So an oral contract should be enough to show a property interest in a motion to dismiss. Oral contract was just to teach at that school. It didn't say to teach forever, just said you could teach at that school. Right. Well, she wasn't denied the right to teach forever, your honor. She was just removed from that school. When she complained of harassment, when basically when she complained of retaliation against the fund for Ghana and Bowdoin, they said, okay, you can't teach here ever again. We're making up this false report against you and you can teach at any other school. And so that was the action taken against her where she was entitled to due process. The Supreme Court, when it said an implied contract is enough to show it in discovery, we learned defendant Bowdoin even admitted that she was entitled to due process. She just needs to have the opportunity to make the claim. Mr. Ingram, I see your time is up. We'll get your full rebuttal. We'll hear from the other side. Thank you, your honor. Good afternoon. May it please the court. My name is Maria Fair and I represent Jared Regano, administrator of the estate of Joseph Regano, who was the Solon City School District's former superintendent. I also represent Fred Bowdoin, the district's current superintendent. There's been a little confusion on the facts, so I just wanted to explain why we're here. We're here because back in 2017, Mary Beth Ingram, a per diem substitute at Lewis Elementary, sent unwanted and unprofessional emails and notes to Randall Davis, a second grade teacher at that building. And she continued sending these notes and emails, even though Davis asked her to stop. Ms. Ferry, you can do all this, but you might try to respond to the argument that your friend on the other side has made. His point is issue preclusion doesn't apply because the only average employment action issue resolved in the state court case was the refusal to rehire. And as you heard him say, in the federal court action, she's bringing other forms of adverse employment action, issuing biased reports, doing investigations that treat male and female, men and women differently. What's your answer to that point? You didn't raise a I have three responses to that. And my first response is that under this court's jurisprudence, an investigation by itself is not an adverse employment action, regardless of whether done in bad faith or in good faith. And that's Coon versus Washtenaw County. And any equal protection claim in the employment context requires disparate treatment, a change in the terms and conditions of employment. In the disciplinary context, this typically looks like a materially an adverse employment action. And here, throughout her complaint, if you look at Ingram's federal complaint, she complains about the and if she hadn't been restricted, she wouldn't have filed this. Now, after a court of competent jurisdiction after the state court has already determined that that restriction from one elementary school building was not materially adverse. Ingram is now trying to concoct and compile various different adverse employment actions, but they do not fit an investigation by itself cannot be an adverse employment action. And my second point on this is, if we look at the actual decision by the state court, we have now a record, we have the benefit of a record, we have summary judgment, we have evidence. And if we look at the state court's decision, as well as the appellate decision, which went through each exhibit in painstaking detail, we see that Ingram's allegations of unfair and biased investigations are not supported by that record. For example, she repeatedly says that this investigation was unfair because she didn't know what she was investigated for. She had no idea. And the documents that the state court looked at specifically her own preliminary statement that she submitted before the exactly exactly why this investigation was happening and, and that the allegations against her were the same reason that she was restricted. And that's because she continually sent these inappropriate and unwanted emails and notes. You know, what? Go ahead. Go ahead. A fact finder to decide that you're saying there's no question. But I think I think that a fact finder could certainly take a look at this, but there has already there is a record. And the the the state court looked at all of the documents and all the evidence. And it's very clear also from that record, that there is no similarly situated comparator. Obviously, there has to be a similar situated comparator in any kind of sex discrimination claim. But here there isn't. And Ingrid tries to point to Davis as the male comparator. But the the evidence reviewed and presented by the state court, particularly the eighth district court of appeals, shows that he was never he never engaged in this misconduct. He never sent emails that that somebody asked him to stop sending. He never disregarded his building principles direction. He never engaged in this misconduct. And he's not he's not a similar situated comparator. I think ultimately. So can I just make sure I'm understanding something you're saying in the state court action? They address the male versus female point? No, I want to be clear about that. No, they did not. They did not address male versus female explicitly because that was not part of the there. That was a retaliation claim. But their recitation of the facts makes it clear that Ingram's allegations are not entitled to the presumption of truth that that they would otherwise be entitled to. There is a we have the benefit of the record here about what happened. We have we have evidence. We have emails. We have statements. And the state court decision, particularly the appellate court, went through this in great detail. You know, I think what it discrimination claims right now were asserted in a state court against Ragana and Bolden, they would not be considered by that court. They would be immediately dismissed as barred by collateral estoppel. Why why did you urge the district court to rule on issue preclusion grounds? Why not just say, hey, we've done discovery. We're at summary judgment. These are just recognizable claims. I think that well, first of all, we were not done with discovery. At the federal courts. And there's no there's no sense in continuing discovery. There's no sense in dragging these public officials, these superintendents to continue with depositions, to continue with producing documents. Tens of thousands of pages of discovery were already produced in the state court. And there's no sense. And it's just a waste of time to continue this. If if Ingram cannot prove the central one of the one of the key elements for each claim that she has to prove is adverse employment action. And she can't show that she can't show that because a court of competent jurisdiction has already determined that the restriction, which is the main thing she challenges, the restriction from Lewis was not that adverse employment action. And, you know, I think I think the outcome must be identical in federal court. She's bound by the decision in state court as to this factual question as to as to the Lewis, whether the federal court can't have a situation where federal courts are reviewing and possibly over. It doesn't sound like there's a lot of peril for you if we acknowledge that the state court decision is binding here as to the request to come back as a substitute. And but we say the federal court action does have this distinct theory of a biased investigation. Let's just call it distinct for the sake of argument. You go back to the district court. If they want discovery on it, they have it. Then you move for summary judgment. This court's jurisprudence, again, has has very clearly said 10 years ago, a decade ago, that an investigation by itself, even if done in bad faith, is not an adverse employment action. You need to have something that changes the terms and conditions of her employment. Ingram must show something that changes the actual the actual terms and conditions. And she has shown nothing of that sort. There's no option for her to to to prove an equal protection or a Title seven sex discrimination claim without that material change in the terms and conditions of her employment. So so there's no sense in continuing public officials dragging them into this this discovery. How did this matter start? Did she file a claim with the school board or the superintendent or did did the person that she was talking to file a claim? So that's a great question. Initially, Davis, he raised an informal complaint. He said, you know, this person is continuing to email me and I just I just want her to stop. I just don't want anything to do with her. And then later on, later in the sequence of events, she sent him and this was after she was restricted. She sent him a romantic letter, very romantic and very inappropriate. And then she then Ingram emailed the the the building principal and the superintendent and said that this romantic letter was actually a complaint and that they should meet with her and talk about her complaint of sexual harassment, discrimination. And then and then, you know, even though there wasn't actually a technical complaint, the district said, OK, well, we'll take a look at this. We'll take a look and see what happens here. And then there was an internal investigation. And then after the internal investigation, there were two separate external independent investigations that both determined that the district did nothing wrong in terms of how it treated Ingram and and her allegations. I also, Judge Seiler, I know you raised procedural due process. So I so I do want to note that the trial court correctly dismissed Ingram's procedural due property interest in continued employment. Loudermilch versus Findlay. But even if Ingram did, she doesn't. But even if she did have a property interest, she certainly does not have a constitutional interest in continuing to pick up substitute shifts at only one building at her preferred location. And and, you know, Ohio law specifies how a substitute can advance to become a contractual teacher. That's that's in the Ohio revised code. And it's certainly not with any kind of oral agreement. She said it was a promise rather by the superintendent, I think, I guess, for forever to teach at that school. Is that what she claimed? My understanding, Your Honor, is that she claimed that the building principal allowed her to to substitute at that school. And I just want to point out that, again, we have a record on this. The state courts, the appellate courts specifically decided this issue and specifically noted that Ingram did not present any evidence of a written or an oral agreement. I also want to point out that under Ohio law, an oral an oral agreement for employment without any any term, any definite term is considered at will employment and does not create any kind of a property interest. And that's why just just to make sure I'm understanding this, I take it none of the arguments about that investigation or bias in investigating females versus males. None of that was raised in the state court case. Am I right about that? So Ingram certainly raised claims about the bias of the investigation. So, for example, in paragraph 147 of her state complaint, she says that the disposition was false and propagated lies. So contrary to opposing counsel's answer to your question previously, she did certainly say in the in the state complaint that all of this was false and all of it was lies. She she did not specify whether males and females were treated differently. But but again, even in the flaws of this investigation cannot create a cause of action by themselves, even if they were. I know that's your big your theory. I got it. And maybe it's right. Just another related question. I take it in the district court below this theory that issue preclusion can apply because. You know, there's a there's a biased report. There's a difference between male and female investigations was that that was raised in front of the district court judge when he decided issue preclusion applies. Right. Was it raised or not? Yes. So so in opposition to our motion for judgment on the pleadings, Ingram raised the question of other other adverse employment theories that I know. And I'm just saying with these two raised with those two raised. Yes, my understanding is that they were raised and the court specifically said this is really about the restriction from Lewis. That's the she alleges. And that's the harm that a court of competent jurisdiction found not to be materially adverse. And so she cannot go forward with any of her remaining points. We asked that this court from the trial court's dismiss decision and dismiss all claims against defendants. Thank you, Miss Fair. Mr. Ingram, you have your rebuttal time. You need to. Thank you, Your Honor. I would like to address a few things that were raised in some of Judge Seiler's questions. So regarding who filed the claim first on December 14th, 2017, Mary Beth filed a complaint of harassment with Mike Acom, and he has admitted that. So that occurred before any of the instances that Miss Fair was talking about. There is no formal complaint ever filed against Mary Beth. That was the whole juxtaposition of no due process. They were accusing her of something, never showed her complaint, never gave the allegations, never gave her a chance to respond to it. Regarding the oral contract, Mr. Acom came to Mary Beth and said, look, I want you to substitute here. She said, I'll only do it if you say I only have to substitute in Lewis Elementary. He agreed to that. The board said in discovery that he had the right to do that. Now the motion for issue preclusion came before discovery was completed. Discovery actually is done. So if you're worried about judicial resources for these claims regarding adverse employment, discovery was completed on March 10th, which was the exact day that the court issued its opinion saying issue preclusion applied. But it extended discovery twice. It allowed multiple depositions to take place. The magistrate got involved to address discovery issues. So the only reason discovery would need to be reopened if your honors were to allow the due process claim and the breach fiduciary duty claim to go forward, both of which should be allowed because the due process claim, if this was just she was a substitute and she can't substitute anymore, we would concede there's no due process issue. But in Perry v. Sinderman, the Supreme Court said even an implied contract can get you through summary judgment. Mary Beth could prove that she had a property interest in this oral contract because that's the only reason that she took the job. And for them to punish her and take it away, she should be at least entitled to notice. Just to make sure I'm understanding this theory, the way you recited it was that the conversation was, I'll substitute. I'd like to substitute. But if I substitute, I want to substitute here. He says, OK, yeah, if you substitute, you substitute here. That doesn't prove you get to be a substitute. It just says if you're a substitute, you substitute here. I don't understand why that changes the at-will calculation. Because your honor, it said, and if you look in the briefing where we show they even advertise, if you want to be a sub, we need subs. We can show you where you can choose where you substitute. She would not have agreed to substitute for the district had this restriction not been put in place. Under your theory, is it a fact that she had a lifetime contract with that school because she was told she could teach there? No, your honor. The theory is that if they were going to say you can't teach at Lewis, they needed to give her notice and an opportunity to be heard. That's all that she's asking for. Due process is, you know, it's court, our whole system. And all she wanted was notice and an opportunity to be heard. And she was denied that. And if this is not allowed to go forward, that will happen again. If there was no oral contract, then I would say no, she would not have a call to action. But she should have the right to prove that oral contract before a jury. And I've gone past my time. So if there are no further questions, thank you, your honors. All right. Thanks to both of you for your arguments. We appreciate them. The case will be submitted.